CASE 92.—ACTION BETWEEN SARAH WALTERS AND LIN-
        NIE NEAFUS AND OTHERS FOR CONSTRUCTION
        OF THE WILL OF JOHN L. CROSS, DECEASED.—
        February 15, 1910.

## Walters v. Neafus, &c.

Appeal from Larue Circuit Court.

SAMUEL E. JONES, Circuit Judge.

From the judgment, Mrs. Walters appeals and
Mrs. Brownfield's heirs file a cross-appeal.—Re-
versed.

1.  Wills—Construction—Presumption  Against  Intestacy.—The
    presumption that testator intended to dispose of his entire
    estate is a rule of construction only, and does not warrant
    a disposition by the court of  property  not in fact dis-
    posed of.

2.  Wills—Construction—Intestacy.—Testator minutely described
    his real and personal estate, and indicated the persons to
    take.  In one clause he gave to his widow a life estate in
    all his realty subject to be defeated in case she should re-
    marry or should abandon the property, in which event testa-
    tor devised the remainder one-half to the widow and the
    other half to his daughter, B., but no disposition was made
    of the remainder of the other half in case the widow should
    not abandon the property, and did not remarry.  Held, that
    since remaindermen take immediately on the falling in of the
    life estate, whether by the death of the life tenant or the
    defeasance of the life estate during the tenant's life, though
    neither of such contingencies are expressly provided for in
    the will, the widow not having abandoned the property or
    remarried, on her death, the one-half of the remainder un-
    disposed of passed to testator's heirs as intestate property.

3.  Wills—Construction—Residue—Also any Property or Money
    Not Mentioned Herein.—Testator after having specified in
    detail the property which his widow should have, and having
    failed specifically to devise the remainder of one-half of his

Walters v. Neafus, &c.

realty bequeathed to his wife for life in the event that she should not remarry or abandon the property, declared that the proceeds of all the property sold by the executor and also "any property or money not mentioned herein," should be equally divided between his wife and daughter, B.  Held, that the 'language quoted referred only to inconsiderable items of property which testator had failed to mention and which were of doubtful existence, and was not effective as a residuary clause to pass such undisposed of remainder.

4.  Wills—Intestate Property—Equalization of Distribution.—Ky. Stat. section 1407 provides that any real or personal property or money given or devised by a parent or grandparent to a descendant shall be charged to the descendant or those claiming through him in the division or distribution of the undevised estate, and such parties shall receive nothing further therefrom until the other descendants are made proportionately equal with him, according to his descendable and distributable share of the whole estate.  Held, that where testator left surviving two daughters, and died intestate as to a remainder of one-half of his real estate devised to his widow for life, the other half of which was devised to his daughter, B., the half undisposed of was not distributable equally to the surviving daughter and the heirs of the deceased daughter, but should be so distributed as to equalize their shares.

O. M. MATHER for appellant.

WILLIAMS & HANDLEY, D. H. SMITH and CHARLES H. CREAL for appellees.

OPINION OF THE COURT BY JUDGE O'REAR—Reversing.

The last will of John L. Cross, probated in November, 1879, is in these words:

"In the name of God—Amen:

"I, John L. Cross, being weak in body and being conscious of the uncertainty of life and the certainty of death and being of sound mind and disposing memory, and being desirous of disposing of that portion of this world's goods that it has pleased God to bless me

with and in the way I desire and to those to whom I wish I do by these presents make and publish this my last will and testament, hereby revoking all former wills by me made, and hereby disposing of my property and effects in the following manner, viz.:

"Item 1. I desire that my body after my death shall be decently buried in good style and shall be buried next to my second wife in my grave lot purchased by me and that suitable head and foot stones be placed at my grave such as my wife shall desire.

"Item 2. I desire that all of my just debts of every character be first paid out of my estate before any division is made.

"Item 3. I give and bequeath to my daughter, Sarah Walters and her husband, B. F. Walters. in full of their part of my estate the following notes and rent bond the last of which I paid off for said Walters and the two notes the said Walters owes me. One of said notes is for $46, dated March 29, 1870, due one day after date, the other for $68.60 dated Aug. 10, 1866 and due 10th day of May, 1867. The rent bond is for $100, paid by me as surety to A. F. Smith Jan. 13, 1870. One of said notes is credited by $12.68 paid December 17, 1867.

"Item 4. I give to my grand-daughter, Sallie Brownfield, a watch and chain, the value of two hundred dollars, and in order to raise the money for that purpose I desire that my executor hereinafter appointed shall sell or swap the watch and chain I have now and raise so much as it will and then he will pay the difference so as to purchase the watch and chain aforesaid and the same is to be selected by him.

"Item 5. I give and bequeath to my beloved wife, Sallie C. Cross, my horse and buggy and harness and cow and the four hogs and six pigs, and I give to

her all of my household and kitchen furniture of
every description also one forty blade cutting box
and all the feed that is on hand at my death.    I
also give to my beloved wife my house and all the
land connected therewith situated in Hodgenville on
the north side of Water street, during her widow-
hood and occupancy of said property, but should she
marry and abandon the occupancy of said property
then said house and lot are to be sold and the pro-
ceeds of said property is to be equally divided and
one-half to go to her and the other half to go to my
daughter, Elizabeth E. Brownfield. I also give to my
wife all my farming utensils and tools on hand also
all the soap and tubs and things in the meat house. I
also give to my wife all the commissions and percent-
age that is coming to me from all the estates that I
am either guardian or administrator of and direct
my executor to pay the same to her when collected.
I also give to my wife all the bees and gums and all
the poultry on hand.

"Item 6.   I hereby nominate  and  appoint my
friend I. W. Twyman as my executor of this my last
will and the court is requested to allow him to qualify
as such without giving security.   And my executor is
directed to collect all notes and accounts as fast as
they fall due, and I direct him to pay one-half of the
proceeds of said notes and accounts as fast as collect-
ed to my wife, Sallie C. Cross, and the other one-half
to my daughter, Elizabeth Brownfield all of which
I give to them and is to be divided as aforesaid.   This
gift includes all my cash and cash notes and accounts
of every description subject to my debts and ex-
penses of administration and the devises above
named except also I give to my wife a note on Jack
Perry for $40.   I also give to my wife one saddle bri-

dle and one set of plow gears. I desire that the proceeds of all the property sold by my executor be equally divided between my wife and my daughter, Elizabeth Brownfield also any property or money not mentioned herein.

"Item 7. For the kind regard and friendship shown me by my friend I. W. Twyman I give to him my one-half of the fire-proof safe now in the office of Read & Twyman to be his own property he owning the other one-half.

"In testimony whereof I have hereunto set my hand and signed my name this 16th day of Aug. 1879.

JOHN L. CROSS."

The widow of the testator did not remarry and continued to live upon the lot devised by the fifth clause of the will until her death in 1909. She had no issue.

The testator had but two children, one the appellant, Sarah Walters, the other Elizabeth Brownfield, who also survived the testator, but died before his widow, Sallie C. Cross, died. She left three daughters as her issue, who brought this suit to recover the possession of the house and lot devised by the fifth clause of the will, claiming that under the will Elizabeth Brownfield took the estate in remainder, and at her death intestate it descended to them as her heirs at law. The collateral kindred of Sallie C. Cross were made defendants. They assert that Mrs. Cross took a defeasible life estate in the whole of that lot, her life estate subject to be defeated by her remarriage or abandonment of the property as a home, in which latter events, or either of them, she took a fee in one-half the property, and in any event that she took the fee in one-half of it under what is termed the residuary clause of the will, being item 6. Sarah

Walters was also made a party. She contends that the testator died intestate as to the remainder estate in the house and lot in Hodgenville, and that she and Elizabeth Brownfield each inherited one-half of it subject to the life estate of the widow; or if it be construed that Elizabeth Brownfield took one-half of that property in fee as a devisee under the will, then that the testator died intestate as to the other half, and that she, Mrs. Walters, inherited that half as heir at law by virtue of a statute of this state.

The presumption is that testator intended to dispose of his entire estate. Howard v. Cole, 124 Ky. 315, 100 S. W. 225, 30 Ky. Law Rep. 1027; Thomas' Exr. v. Thomas, 110 S. W. 854, 33 Ky. Law Rep. 700; Newcomb v. Fidelity Trust Co., 108 S. W. 911, 33 Ky. Law Rep. 41; Trusty v. Trusty, 59 S. W. 1094, 22 Ky. Law Rep. 1127; Mayes v. Karn, 115 Ky. 264, 72 S. W. 1111, 24 Ky. Law Rep. 2110.

The terms of the will before us manifest that purpose. That construction should be adopted, therefore, if possible, which effectuates that purpose. But it must always be borne in mind that the intention of the testator to dispose of his entire estate is a rule of construction only, and not a warrant for disposition by the court; for, although the testator may have intended to dispose of his whole estate, and although his intention must prevail where practicable and not unlawful, yet he must have done so by the terms of his will, construed as the language used reasonably justifies. The testator here minutely described his personal and real estate, and clearly indicated the persons to take. In the clause relative to his real estate he gave his widow the life estate in the whole of it, subject to be defeated by either of two acts on her part—one, should she marry again; the other,

should she abandon the property. Should she elect to terminate her life estate by either of the courses suggested, then the testator devised the remainder over, one-half to his said widow, and the other moiety to his daughter, Mrs. Brownfield. He did not, however, provide in express terms what disposition should be made of the remainder estate should the life tenant remain his widow and not abandon the property as her home. The law seems to be well settled that, where a remainder estate is created, the remainderman will take immediately on the falling in of the life estate whether by the death of the life tenant, or by the defeasance of the life estate during the life of the life tenant, although neither of those contingencies are by the will expressly noted. Aulick v. Wallace, 12 Bush, 531; Wilder v. Wilder, 86 S. W. 557, 27 Ky. Law Rep. 715; Dunlaney v. Dunlaney, 79 S. W. 195, 25 Ky. Law Rep. 1663; Davie v. Davie, 81 S. W. 246, 26 Ky. Law Rep. 314.

Mrs. Brownfield took a half of the real estate as remainderman under the will, which descended upon her death intestate to her heirs at law, the appellants. Where, then, vested the other half? Not in Mrs. Cross. One can scarcely be a remainderman to his own life estate. The contingency of the life tenants dying without defeating her life estate is expressly provided for in the will. She is given a life estate only in the whole of the realty. The contingency of her electing not to remain on the land or to remarry is also provided for. In that event she would take one-half the land in fee. Therefore every contingency possible with reference to her was expressly provided for in plain terms. An express provision, evidencing such careful consideration, ought not to be overturned by implication based

upon a vague, general expression elsewhere in the will. The rule is specific directions prevail over general directions in case of conflict. Mrs. Cross' heirs at law contend that by the last sentence of the sixth clause she takes the fee in one-half the remainder estate in the land. That clause reads: "* * * I desire that the proceeds of all my property sold by my executor be equally divided between my wife and my daughter Elizabeth Brownfield, also any property or money not mentioned herein." The testator was very careful, as will be noted, to specify the property in detail which the wife was to have. It is evident he intended to provide for her comfortable support so long as her condition remained as it was immediately after his death. Those things that she was to take absolutely, not dependent upon her continuing as his widow, and, as constituting his provision for her sustenance, he was careful to particularize, so far as they were of enough magnitude to be remembered. As to her interest in his real estate, there is not room for speculation as to what he meant. By the expression "also any property or money not herein mentioned," he evidently had in mind those inconsiderable items of property of which he then could not remember, and which therefore had not been mentioned. It was a residuary clause intended to dispose of a residuum of the class just enumerated, and which was of doubtful existence. He was speaking then of things which the executor was to sell, of property not specifically devised, and money and money debts which the executor had not the power to sell. These things the wife was then to have—immediately—for her own use and enjoyment. She was the object of bounty being provided for. Her comfort was the subject of his providence. Knowing that

after her death she could not enjoy, could not be possibly benefited by a devise to her to then take effect, it would be a strained construction to say that he nevertheless so intended; for that would have been disposing of one-half of his real estate, after his widow's death, to strangers to his blood, unknown to him, perhaps, some of them may be born when the will was written and none of them named, described, or alluded to as possible objects of his care. As they alone could be benefited by such a disposition of his property if he had so intended, it is likely he would have so expressed it. It is noted that whenever he gave anything by the will, even of insignificant value, he always named the person to take by name and not by class. Whatever other doubts we have concerning the proper construction of this document we have none that testator never intended or suspected that his widow would, if she lived on the land as his widow until her death, get more of it than a life estate in the whole of it.

Construed according to the law of this state, the remainderman named, Mrs. Brownfield, took only one-half of the estate when the life estate terminated. The testator nowhere indicated that she was to have more than one-half of his land. Curiously he omitted to say where the other half should vest upon the termination of the life estate. The presumption against intestacy as to any part of the estate vanishes when the fact becomes apparent that some part of it was not disposed of. In no event can that presumption supply an omission to devise a parcel of the estate. Nor is the clause of the will excluding Mrs. Walters effectual. The laws of inheritance are enacted by the Legislature. If one dies intestate as to any of his property the law says who shall take it.

The testator had not the power to change the laws of descent by his will. He might dispose of his property as he pleased within certain limitations, even to the exclusion of his heirs, but, unless he disposed of his property by will, what is undisposed of the law distributes. Todd v. Gentry, 109 Ky. 704, 60 S. W. 639, 22 Ky. Law Rep. 1319; Franck v. Franck, 72 S. W. 275; Clarkson v. Clarkson, 8 Bush, 655; Page on Wills, 548; Tabor v. McIntire, 79 Ky. 505, to the contrary, was overruled by Todd v. Gentry, supra.

Appellants, Mrs. Brownfield's heirs claim that, if the testator died intestate as to the remainder in the one-half of this land, that half descended equally to Mrs. Walters; and Mrs. Brownfield's descendants—to each a one-fourth of the whole. But section 1407, Ky. Stat. (Russell's Stat. Sec. 3822), intervenes there, providing: "Any real or personal property or money, given or devised by a parent or grand-parent to a descendant, shall be charged to the descendant or those claiming through him in the division or distribution of the undevised estate of the parent or grand-parent, and such party shall receive nothing further therefrom until the other descendants are made proportionately equal with him, according to his descendable and distributable share of the whole estate, real and personal, devised and undevised."

The judgment of the circuit court gave to the heirs at law of Mrs. Sallie C. Cross one-half of the lot mentioned in the fifth clause of the will, and to the heirs of Mrs. Elizabeth Brownfield the other half. Mrs. Sarah Walters prosecutes this appeal. Mrs. Brownfield's heirs prosecute a cross-appeal. To adjust the rights of the parties, it is necessary to reverse the judgment, which is done, and the cause remanded, with directions to enter a judgment in conformity herewith.